UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| Marquet Trawick, | ) | CASE NO. 3:11 CV 2508 |
| | ) | |
| Plaintiff, | ) | JUDGE JAMES G. CARR |
| | ) | |
| v. | ) | |
| | ) | <u>OPINION AND ORDER</u> |
| Jason Bunting, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

*Pro Se* plaintiff Marquet Trawick filed the above-captioned action under 42 U.S.C. § 1983 against Marion Correctional Institute ("MCI") Deputy Warden of Special Services Jason Bunting, Health Care Administrator Ed Castaneda, Physician C. Mosher, Physician Assistant J. Krisko, and Physician Review Representative Dr. Mendel.  In his Complaint, plaintiff alleges defendants were deliberately indifferent to his serious medical needs when they failed to provide him with necessary specialist care and treatment.  Plaintiff seeks injunctive, declaratory and monetary relief.

**I.    Background**

Plaintiff alleges he was diagnosed in 1998 with an internal injury to his left shoulder/bicep area. Between 1998 and 2008, he was treated with periodic cortisone injections, and pain relief

1

between injections in the form of naproxen.[1] In March 2009, plaintiff was admitted to Marion Correctional Institute in Marion, Ohio to serve a nine year prison term. Two months later, he was referred by specialists at Columbus Medical Center ("CMC") for an MRI of his left shoulder area. According to documentation attached to the Complaint, the MRI results indicated the following:

> (1) Complete supraspinatus tendon tear with retraction and atrophy of the supraspinatus muscle compatible with remote tear. Subsequent high-riding humeral head is present. (2) Large full-thickness tear of the anterior and mid fibers of infraspinatus tendon with severe atrophy of the superior half of infraspinatus muscle. (3) Partial-to-near complete tear of the biceps tendon intracapsular portion. (4) Moderate-to-severe acromioclavicular joint osteoarthritis. (5) Multiple tears of the anterior, superior, and posterior labrum with associated several tears.

(Doc. 1-1 at 15, Exh. 13). Based on this result, plaintiff alleges an unnamed CMC physician recommended the resumption of periodic cortizone injections, prescribed naproxen, and ordered plaintiff to return in four to six months. (Doc. 1 at 3).

In May 2010, plaintiff returned to CMC, as ordered, for a follow-up visit and x-rays. CMC physician Dr. El Hothen examined plaintiff and recommended he continue with naproxen as needed and return in three to six months. Shortly thereafter, plaintiff was seen by defendant Krisko who discontinued plaintiff's naproxen prescription on the orders of defendant Mosher. Defendant Krisko indicated that Dr. Mosher had directed plaintiff to purchase anti-inflammatories from the prison commissary. (Doc. 1 at 4).

Several months later, plaintiff began to experience aches in his left shoulder. He was

---

[1] Plaintiff refers to the pain relief medication he received as "naperson." The Court believes this is most likely a misspelling meant to refer to naproxen, which is a non-steroidal anti-inflammatory (NSAID) drug that is used to treat mild to moderate pain and inflammation. Naproxen is the generic name for this medication; it may also be known as Naprosyn, Anaprox, or Aleve. It may be purchased over the counter, but may also be prescribed in higher dosages. *See* www.medicinenet.com/naproxen.

examined by MCI Physician Assistant ("PA") Barchus in September 2010, who concluded plaintiff should be seen by a specialist and submitted a referral to CMC. On October 8, 2010, plaintiff was seen by a nurse and his chronic care medication appears to have been renewed. (Doc. 1-1 at Exh. 3). He returned for a doctor's visit on October 25, 2010. However, he apparently engaged in inappropriate behavior in the waiting area and the visit was cancelled.

Plaintiff was thereafter placed in segregation. While there, he was seen by defendant Krisko on November 9, 2010 and by PA Barchus on November 24, 2010. Barchus again referred plaintiff to CMC for specialist care relating to plaintiff's "acute pain and loss of range of motion of the left shoulder and arm." (Doc. 1 at 5). Due to the fact he was in segregation, plaintiff initially did not have access to the commissary to purchase pain relief medication. He was later permitted to receive a short term order of Tylenol while in segregation. (Doc. 1-1 at 3, Exh. 3). In addition, it appears an appointment was made for plaintiff to see an orthopedic specialist in late December 2010. (Doc. 1-1 at Exh. 11; Doc. 1 at 6).

On December 20, 2010, plaintiff was examined by defendant Mosher. In her notes from this examination, defendant Mosher stated plaintiff claimed to be unable to exercise or move his left shoulder, and refused to attempt a range of motion exam with his left arm. (Doc. 1-1 at Exh. 13). She determined, however, that plaintiff's recreation record indicated plaintiff had regularly attended recreation activities throughout the year. Based on this fact and a visual examination of plaintiff's left shoulder area, defendant Mosher determined plaintiff's "complaints [are] out of proportion with muscular appearance on exam." (Doc. 1-1 at Exh. 13). She cancelled plaintiff's appointment with the orthopedic specialist and give him information and instructions regarding

appropriate exercises for his shoulder.[2] (Doc. 1-1 at Exh. 13). In addition, she expressly noted that plaintiff was "not a candidate for steroid injection at this time as [he] needed work on range of motion." (Doc. 1-1 at Exh. 13).

Throughout this time period, plaintiff filed numerous complaints and grievances regarding his alleged lack of appropriate medical care. He filed Informal Complaint Resolutions on October 8, 2010 (Doc. 1-1 at Exh. 1), November 10, 2010 (Doc. 1-1 at Exh. 9), and April 17, 2011 (Doc. 1-1 at Exh. 16), each of which were denied. He then filed Notices of Grievances on November 3, 2010 (Doc. 1-1 at Exh. 2), November 22, 2010 (Doc. 1-1 at Exh. 10) and April 20, 2011 (Doc. 1-1 at Exh. 17). In response to plaintiff's November 3rd Grievance, MCI permitted him to receive Tylenol while in segregation. (Doc. 1-1 at Exh. 3). Plaintiff's November 22nd Grievance was denied on the grounds that he had "an order for an ortho-consult and bottom bunk for six months." (Doc. 1-1 at Exh. 11). His April 10th Grievance was denied on the ground that he had been transferred to another institution. (Doc. 1-1 at Exh. 18).

Plaintiff appealed the denial of each of these Grievances to the Chief Inspector. (Doc. 1-1 at Exhs. 4, 12, and 19). In each of his Appeals, he claimed to be in acute, chronic pain and requested immediate medical attention. He demanded to know the "person, place and cause for such denials, delays and cancellations of CMC doctors' treatment plans, prescriptions and orders to return patient for follow-up treatment/injections." (Doc. 1-1 at Exh. 19). Each of his Appeals was denied on the ground that MCI medical staff "is giving you proper care within ODRC guidelines." (Doc. 1-1 at Exhs. 5, 14, 20).

---

[2] Plaintiff also claims defendant Mosher cancelled specialist referrals made by P.A. Barchus for plaintiff in September and November 2010.

Plaintiff also filed several "kites" in which he raised similar concerns. The first was directed to defendant Bunting, who noted plaintiff had recently visited the doctor and that his requests for medical attention appeared to be addressed. (Doc. 1-1 at Exh. 8). The second kite was addressed to Sergeant Wolfe, who directed that plaintiff be provided with a bottom bunk and further instructed "no lifting + 15 lbs, no standing + 20 minutes, sit down job, no rep[etitive] bending." (Doc. 1-1 at Exh. 7).

Plaintiff filed the instant Complaint on November 17, 2011, alleging (1) deliberate indifference to his serious medical needs in violation of the Eighth Amendment; (2) failure to provide competent medical care in violation of the Due Process Clause; and (3) state law tort claims for negligence and malpractice. He sues the defendants in their individual capacities and seeks declaratory, injunctive and monetary relief.

## II.     Standard of Review

Although *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the district court is required to dismiss an *in forma pauperis* action under 28 U.S.C. §1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact.[3] *Neitzke v. Williams*, 490 U.S. 319 (1989); *Lawler v. Marshall*, 898 F.2d 1196 (6th Cir. 1990); *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996). A claim lacks an arguable basis in law or fact when it is premised on an indisputably meritless legal theory or when the factual contentions are clearly baseless.

---

[3] An *in forma pauperis* claim may be dismissed *sua sponte*, without prior notice to the plaintiff and without service of process on the defendant, if the court explicitly states that it is invoking § 1915(e) [formerly 28 U.S.C. § 1915(d)] and is dismissing the claim for one of the reasons set forth in the statute. *McGore v. Wrigglesworth*, 114 F.3d 601, 608-09 (6th Cir. 1997); *Brooks v. Seiter*, 779 F.2d 1177, 1179 (6th Cir. 1985).

*Neitzke*, 490 U.S. at 327.  A cause of action fails to state a claim upon which relief may be granted when it lacks "plausibility in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564 (2007).

A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal* , 129 S.Ct. 1937, 1949 (2009).  The factual allegations in the pleading must be sufficient to raise the right to relief above the speculative level on the assumption that all the allegations in the Complaint are true. *Bell Atl. Corp.*, 550 U.S. at 555.  The plaintiff is not required to include detailed factual allegations, but must provide more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S.Ct. at 1949.  A pleading that offers legal conclusions or a simple recitation of the elements of a cause of action will not meet this pleading standard.  *Id.*  In reviewing a Complaint, the Court must construe the pleading in the light most favorable to the plaintiff.  *Bibbo v. Dean Witter Reynolds, Inc*., 151 F.3d 559, 561 (6th Cir.1998).

**III.    Analysis**

    **A.    Eighth Amendment**

Plaintiff claims defendants were deliberately indifferent to his serious medical needs. Specifically, he objects to defendants Krisko and Mosher's decision to discontinue his naproxen prescription and require him to purchase anti-inflammatory medicine from the prison commissary. In addition, plaintiff argues defendant Mosher was deliberately indifferent because she discontinued his cortisone injections on the basis of an inadequate evaluation of his condition that relied solely on plaintiff's external appearance and ignored the MRI results indicating internal injuries.  Further, plaintiff maintains defendants Castaneda and Bunting failed to intervene to prevent the denial of appropriate medical treatment.  Finally, he asserts defendant Mendel is liable because he endorsed

the Chief Inspector's denial of his December 2010 Grievance Appeal. *See* Doc. 1-1 at Exhs. 12, 13.

The Eighth Amendment prohibits prison officials from "unnecessarily and wantonly inflicting pain" on prisoners by acting with "deliberate indifference" to prisoners' serious medical needs. *Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 (6th Cir. 2004) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). Failure to provide medical care may rise to the level of a violation of the cruel and unusual punishment clause of the Eighth Amendment where objective and subjective requirements are met. *Harrison v. Ash*, 539 F.3d 510, 517-18 (6th Cir. 2008).

To satisfy the objective component, the injury must be sufficiently serious. *See Wilson v. Seiter*, 501 U.S. 294, 297 (1991) (stating that Eighth Amendment is implicated by the "unnecessary and wanton infliction of pain" and not "inadvertent failure to provide adequate medical care"); *Talal v. White*, 403 F.3d 423, 426 (6th Cir. 2005) (requiring that the prisoner demonstrate more than "mere discomfort or inconvenience"). A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Blackmore,* 390 F.3d at 897. *See also Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008).

The subjective component requires a showing that prison officials knew of, and acted with deliberate indifference to, an inmate's health or safety. *Wilson*, 501 U.S. at 302-03. Deliberate indifference "entails something more than mere negligence." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). An inmate must show that prison officials had "a sufficiently culpable state of mind" in denying medical care. *Id.* at 834. This standard is met if "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the

inference." *Flanory v. Bonn*, 604 F.3d 249, 253 (6th Cir. 2010) (quoting *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000)).

Under this standard, allegations of medical malpractice or negligent diagnosis or treatment fail to state an Eighth Amendment claim. *See Estelle*, 429 U.S. at 106; *Brock v. Crall*, 2001 WL 468169 at **2 (6th Cir. April 27, 2001). As the Sixth Circuit has explained, "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976). Accordingly, a difference of opinion between a prisoner and a doctor over diagnosis or treatment fails to state an Eighth Amendment claim of deliberate indifference to a serious medical need. *See Estelle*, 429 U .S. at 107; *Westlake*, 537 F.2d at 860 n. 5; *Lee v. Baker*, 1999 WL 282652 at * 1 (6th Cir. April 30, 1999).

Even assuming his condition is sufficiently serious to satisfy the objective component of the Eighth Amendment standard set forth above, the Court finds plaintiff has failed to allege that defendants were "deliberately indifferent," i.e. that they knowingly disregarded an excessive risk to his health or safety. Plaintiff does not claim that he failed to receive medical treatment for his condition. To the contrary, the Complaint indicates plaintiff was (1) transported to CMC on two occasions for doctor visits, an MRI, and x-rays; (2) seen by physician's assistants for his condition on at least four occasions; (3) given naproxen until May 2010, permitted to purchase pain relief medication from the commissary thereafter, and provided with such medication while he was in segregation; and (4) seen by a prison physician (defendant Mosher) for a thorough examination in December 2010. (Doc. 1 at 3-6). Moreover, MCI appears to have been sensitive to plaintiff's

condition, providing him with a bottom bunk and requiring that he be given a "sit down job" with no lifting over 15 lbs, no standing for more than 20 minutes, and no repetitive bending. (Doc. 1-1 at Exh. 7).

Plaintiff's essential objection is that he disagrees with the course of treatment elected for him by MCI medical staff, in particular defendant Mosher. As set forth above, defendant Mosher examined plaintiff, reviewed his records, and determined that he should follow an exercise plan to increase his range of motion rather than continue with cortisone injections. Plaintiff disagrees with this conclusion, and believes the MRI report indicating internal injuries supports his claim that more aggressive treatment was needed. This type of claim, however, is essentially a negligence or medical malpractice claim and does not set forth allegations that defendants were deliberately indifferent to his medical needs within the meaning of the Eighth Amendment. *See e.g., Brock v. Crall*, 2001 WL 468169 at \*\* 2 (6th Cir. April 27, 2001) ("Brock's essential disagreement with and dispute over the diagnosis and treatment he received, however, is insufficient to establish a violation of the Eighth Amendment"); *Lee v. Baker*, 1999 WL 282652 at \* 2 (6th Cir. April 30, 1999) ("Lee's essential disagreement with the medical treatment which he received is insufficient to establish a violation of the Eighth Amendment").

Similarly, plaintiff's claim that defendants Krisko and Mosher were deliberately indifferent when they required him to purchase naproxen at the prison commissary fails to allege deliberate indifference to his medical needs. Plaintiff was not deprived of all pain relief medication. Rather, he was required to purchase it at the prison commissary instead of receiving it via physician prescription. When he was unable to purchase naproxen in segregation, MCI ultimately provided him with a similar anti-inflammatory pain relief medication until he was released from the

segregation unit. The Court finds plaintiff has failed to set forth sufficient allegations that this constitutes a reckless disregard of a substantial risk of serious harm so as to constitute deliberate indifference in violation of the Eighth Amendment. *See Farmer v. Brennan*, 511 U.S. 825, 835-36 (1994).

With regard to defendants Castaneda, Bunting and Mendel, plaintiff alleges that these defendants should have intervened to ensure that he received appropriate medical treatment. Because the Court has found that the treatment plaintiff received from defendants Mosher and Krisko did not constitute deliberate indifference, his claims against defendants Castaneda, Bunting and Mendel must also fail.

Accordingly, the Court finds that plaintiff has failed to state a claim against any of the defendants for deliberate indifference of his serious medical needs in violation of the Eighth Amendment.

### B. Due Process

Plaintiff next claims defendants violated his due process rights when they failed to provide him with competent medical care. The Fifth Amendment provides that "no person shall be deprived of life, liberty or property, without due process of law." U.S. CONST. AMEND. V. In addition to setting the procedural minimum for deprivations of life, liberty or property, the Due Process Clause bars "certain governmental actions regardless of the fairness of the procedures used to implement them." *Daniels v. Williams*, 474 U.S. 327, 331 (1986). It does not prohibit every deprivation by the government of a person's life, liberty or property. *Harris v. City of Akron*, 20 F.3d 1396, 1401 (6th Cir. 1994). Only those deprivations which are conducted without due process are subject to suit. *Id*.

The Due Process Clause has a procedural component and a substantive one. Plaintiff herein appears to be alleging the violation of substantive due process rights. Under the doctrine of substantive due process, various portions of the Bill of Rights have been incorporated into the Fourteenth Amendment's limits on the power of the states as being "implicit in the concept of ordered liberty." *Palko v. Connecticut*, 302 U.S. 319, 325 (1937). Due process claims of this nature involve official acts which cause a deprivation of a substantive right specified in the Constitution or a federal statute. *Mertik v. Blalock*, 983 F.2d 1353, 1367 (6th Cir. 1993). In addition, under substantive due process, courts have invalidated laws or actions of government officials that "shock the conscience." *See United States v. Salerno*, 481 U.S. 739, 746 (1987). These actions are unconstitutional regardless of the procedural protections provided. *Parate v. Isibor*, 868 F.2d 821, 832 (6th Cir. 1989). A citizen, however, does not suffer a constitutional deprivation every time he is subjected to some form of harassment by a government agency. *Id*. at 833. The conduct asserted must be "so severe, so disproportionate to the need presented, and such an abuse of authority as to transcend the bounds of ordinary tort law and establish a deprivation of constitutional rights." *Id*.

In the instant case, plaintiff's substantive due process claim is based on the allegation that defendants' failure to provide adequate medical care was so severe that it "shocks the conscience." This claim is based on the same facts as plaintiff's Eighth Amendment deliberate indifference claim. Where a specific Amendment provides an explicit source of constitutional protection against a particular sort of governmental conduct, "that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *See Graham v. Connor*, 490 U.S. 386, 395 (1989).

This Court has already considered plaintiff's deliberate indifference claim in the context of

the Eighth Amendment, *infra*. His substantive due process claim is, therefore, dismissed as duplicative of his Eighth Amendment claim.

### C. State law claims

Plaintiff also alleges defendants' failure to provide him with adequate medical care "constitutes the Tort of Negligence and Malpractice under the Laws of the State of Ohio." (Doc. 1 at 10).

Inasmuch as plaintiff's federal claims cannot survive, this Court declines to exercise supplemental jurisdiction over plaintiff's state law claims in this case. Supplemental jurisdiction is governed by 28 U.S.C. § 1367, which includes an explicit provision permitting the district court to decline to exercise supplemental jurisdiction when that court has dismissed all of the claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3); *Saglioccolo v. Eagle Ins. Co.*, 112 F.3d 226, 233 (6th Cir. 1997) (noting that a district court may decline to exercise supplemental jurisdiction over state-law claims once it has dismissed all claims over which it possessed original jurisdiction). Accordingly, plaintiff's state law claims are subject to summary dismissal under § 1915(e).

## IV. Conclusion

Accordingly, this action is dismissed pursuant to 28 U.S.C. §1915(e). The court certifies pursuant to 28 U.S.C. §1915(a)(3) that an appeal from this decision could not be taken in good faith.[4]

IT IS SO ORDERED.

---

[4] 28 U.S.C. § 1915(a)(3) provides that "[a]n appeal may not be taken in forma pauperis if the trial court certifies that it is not taken in good faith."

S/ JAMES G. CARR<br>
UNITED STATES DISTRICT COURT

Case: 3:11-cv-02508-JGC Doc #: 4 Filed: 01/31/12 14 of 14. PageID #: 82